IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRENDA L. HILL MYRICK,
Administrator of the Estate of Gregory Hill,
        Plaintiff,

v.                                          Civil Action No. 3:16-cv-00952-JAG

NAPHCARE, INC., et al.,
        Defendants.

## OPINION

Gregory Lee Hill, a pretrial detainee, died at the Richmond City Justice Center (the "Jail"). On the day of Hill's death, Captain Jervon Johnson along with other deputies took Hill to the medical department for evaluation. The deputies allegedly used excessive force against Hill before, during, and after this evaluation. Moreover, Johnson did not immediately follow an order from the Jail's doctor to take Hill to the hospital.

Brenda L. Hill Myrick, the Administrator of Hill's Estate, has sued Johnson, among others, for the circumstances surrounding Hill's death. Johnson has moved to dismiss two of the claims against him—a claim for negligence and a claim for supervisory liability under 42 U.S.C. § 1983. Because Johnson used his judgment and discretion when handling the situation with Hill, sovereign immunity protects him from the claim for negligence. Further, while the Jail deputies allegedly violated Hill's constitutional rights on the day of his death, because the plaintiff does not allege facts showing widespread misconduct by deputies at the Jail, the claim against Johnson for supervisory liability fails. Consequently, the Court will grant Johnson's motion to dismiss.

## I. **BACKGROUND**

When Hill arrived at the Jail on January 6, 2016, the medical staff incorrectly began treating him for opiate withdrawal instead of benzodiazepine withdrawal.

On January 9, 2017, Hill began experiencing medical symptoms associated with benzodiazepine withdrawal. He "became delusional and agitated." (Am. Compl. ¶ 39.) Officers at the Jail, including Johnson, witnessed Hill displaying signs of medical distress, but did not immediately seek medical attention for him. When the officers determined to take Hill to the medical department, Hill resisted. The officers physically restrained Hill and sprayed him with pepper spray.

Johnson and two other officers took Hill to the medical department. While in the medical department, the two other officers allegedly used excessive physical force against Hill. The medical staff communicated Hill's symptoms to the on-call doctor. The on-call doctor ordered the medical staff to immediately send Hill to the hospital in an ambulance. The medical staff communicated this order to the officers.

The officers, including Johnson, disregarded the directive to immediately take Hill to the hospital. Instead, the officers took Hill to another part of the Jail and strapped him into an emergency restraint chair. Hill became unresponsive. After the medical staff attempted to revive Hill, emergency personnel transported him to the hospital where doctors pronounced him dead.

## II. DISCUSSION[1]

The Administrator of the Hill's Estate has sued Johnson, other Jail officers, the medical staff, and NaphCare, Inc., the company contracted to provide medical services at the Jail. Against Johnson, the plaintiff alleges six counts. Johnson has moved to dismiss two of the claims against him: the claim for simple negligence in Count I and the claim for supervisory liability in Count VII.

### A. Negligence

In Count I, the plaintiff brings a wrongful death claim against Johnson (among others), asserting the theories of negligence, gross negligence, and willful and wanton negligence. Johnson moves to dismiss Count I to the extent the plaintiff has alleged that Johnson acted with simple negligence. Johnson bases his motion to dismiss on the doctrine of sovereign immunity.

In Virginia, sovereign immunity "protects the state from burdensome interference with the performance of its governmental functions." *Pike v. Hagaman*, 292 Va. 209, 214, 787 S.E.2d 89, 92 (2016) (citations omitted). Because the government acts through its employees, this immunity *can* extend to employees in the performance of their discretionary duties. *Id.* at 215, 787 S.E.2d at 92. The Court emphasizes the word "can" because of the complicated and

---

[1] Johnson has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)).

3

inconsistent nature of the law in this area.² Specifically, sovereign immunity protects an employee of a local government if: (1) the employing entity has immunity for the function performed by the employee; (2) the four-factor test set forth in *James v. Jane*³ weighs in favor of the employee; and (3) the claim against the employee raises liability based on simple negligence. *Messina v. Burden*, 228 Va. 301, 310–13, 321 S.E.2d 657, 662–64 (1984). The factors set forth in *James* are:

> 1. The function the employee was performing;
> 2. The state's interest⁴ and involvement in that function;
> 3. Whether the act performed by the employee involved the use of judgment and discretion; and
> 4. The degree of control and direction exercised by the state over the employee.

*Pike v. Hagaman*, 292 Va. 209, 787 S.E.2d 89, 92 (2016) (citing *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980)).

In this case, Johnson worked for the sheriff of the City of Richmond, an immune governmental entity when performing governmental functions, such as operation of a jail. *Dowdy v. Pamunkey Regional Jail Authority*, No. 3:14-cv-003-JAG, 2014 WL 200222, *3 (E.D. Va. May 15, 2017) (citing *Franklin v. Town of Richlands*, 161 Va. 156, 163, 170 S.E 718, 721 (1933)). Johnson only seeks to dismiss the claim of simple negligence. The analysis thus turns on the four-factor test.

The parties seem to agree that the first, second, and fourth factors weigh in Johnson's favor. The Court agrees. The function performed by Johnson—supervising inmates—falls

---

² *See Dowdy v. Pamunkey Regional Jail Authority*, No. 3:14-cv-003-JAG, 2014 WL 200222, *3–4 (E.D. Va. May 15, 2017).
³ 221 Va. 43, 282 S.E.2d 864 (1980).
⁴ "[I]n applying the *James* test to employees of other immune governmental entities, the word 'state' should be deleted and the proper description of the governmental entity substituted." *Messina*, 228 Va. at 313, 321 S.E.2d at 664.

cleanly within the governmental function of housing inmates and properly operating jails. Further, both state and local governments have a great interest in and control over this function.

As to the third factor—whether Johnson's conduct involved the use of judgment and discretion—the Court finds that it did. In evaluating this factor, courts must decide whether the defendant performed a discretionary or ministerial act,[5] and whether the act was necessary to the performance of the governmental function itself. *Pike*, 292 Va. at 217, 787 S.E.2d at 93. Of course, almost every act requires the exercise of some judgment and discretion, but courts must look at the act in the appropriate context to determine the nature of the act. *Id.* at 217–18, 787 S.E.2d at 93. In this context, Johnson (along with the other deputies) exercised discretion and judgment in determining how to appropriately handle Hill's medical situation. Accordingly, the four-factor test weighs in Johnson's favor, and sovereign immunity therefore protects him from the plaintiff's claim of simple negligence.

The plaintiff argues that the medical provider at the jail ordered Hill sent to the hospital immediately, and Johnson had no discretion to disregard this instruction. As an initial matter, the plaintiff provides no legal support for the proposition that a jail deputy has no discretion to disregard the directive of a jail doctor. This argument also ignores the context of the situation. Hill needed to go to the hospital, but Johnson maintained the responsibility of keeping Hill in custody. Accordingly, Johnson (and the other deputies) had to exercise judgment and discretion in deciding how to transport Hill to the hospital, taking into account Hill's medical distress, the

---

[5] Black's Law Dictionary defines a ministerial act as a mandatory act, or an act performed without the independent exercise of discretion or judgment. ACT, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Moreau v. Fuller*, 276 Va. 127, 135, 661 S.E.2d 841, 845–46 (2008) (in the context of petitions for mandamus, defining ministerial act as "one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done" (citations omitted)).

safety of other inmates, and the safety of the public, among other factors that go into operating a jail and handling situations related to specific inmates.[6] Consequently, the plaintiff's argument fails. In the situation surrounding Hill's death, Johnson performed discretionary, not ministerial, acts.

### B. Supervisory Liability[7]

In Count VII, the plaintiff alleges a claim against Johnson (among others) for supervisory liability under 42 U.S.C. § 1983. To state a § 1983 claim for supervisory liability, the plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[6] *See Dowdy*, 2014 WL 2002227, *4 (focusing on the question of "whether, and to what extent, the employee in question must exercise discretion and judgment in applying [regulations, guidelines, and procedures] in often uncertain and confused situations"); *see also Pike*, 292 Va. at 217, 787 S.E.2d at 93 (considering that a nurse "had to exercise her discretion to determine how to carry out the doctor's orders").

[7] In the final paragraph of her opposition, the plaintiff discusses bystander liability. To the extent the amended complaint actually alleged such a claim, the plaintiff fails to state a claim for bystander liability against Johnson. To state a claim for bystander liability, a plaintiff must show that an officer (1) knew that a fellow officer was violating an individual's constitutional right; (2) had a reasonable opportunity to prevent the violation; and (3) chose not to act. *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014). In this case, the plaintiff does not allege that Johnson chose not to act when he witnessed other officer's violating Hill's constitutional right. The plaintiff alleges that Johnson actively participated in the violation. Accordingly, the plaintiff fails to state a claim against Johnson for bystander liability.

6

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing a "pervasive and unreasonable risk of constitutional injury" requires evidence of widespread conduct, or at least evidence that subordinates have engaged in such conduct "on several different occasions." *Id.*

The amended complaint does not allege pervasive or widespread unconstitutional conduct at the Jail. Indeed, the plaintiff only provides facts surrounding this one specific situation with Hill. This does not plausibly state a claim for supervisory liability under § 1983. The plaintiff attempts to take the situation with Hill in time slices, and then argue that these time slices constitute different occasions. (Opp'n Mot. Dismiss 18 ("[T]here were multiple abuses of Mr. Hill carried out at different times, in different manners, with different levels of perniciousness, and in different places of the Jail.").) Such an argument does not align with the law of supervisory liability under § 1983, and courts have rejected it. *See, e.g., Dowdy*, 2014 WL 2002227, *8 (holding that "a single incident does not even imply that similar breakdowns had occurred previously at the [Jail]," and that a plaintiff cannot "merely point[] to a single incident or isolated incidents"). Because the plaintiff has not alleged pervasive misconduct, the Court will grant Johnson's motion to dismiss the supervisory liability claim.

### III. CONCLUSION

For the reasons stated, the Court will grant Johnson's motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 31, 2017
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge